SO ORDERED.

SIGNED this 11th day of July, 2025.



_____
Mitchell L. Herren
United States Bankruptcy Judge

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| IN RE: | |
|---|---|
| NICHOLAS DYUNTAE ANDERSON, | Case No. 24-10660 |
| Debtor. | Chapter 7 |
| STATE OF KANSAS, ex rel.,<br>Amber Shultz, Secretary of Labor | |
| Plaintiff, | |
| vs. | Adv. No. 24-5018 |
| NICHOLAS DYUNTAE ANDERSON | |
| Defendant. | |

**Memorandum and Order Granting Plaintiff's
<u>Motion for Summary Judgment</u>**

Plaintiff, Kansas Department of Labor (KDOL), a creditor of Debtor and pro se Defendant Nicholas Dyuntae Anderson, seeks summary judgment on its complaint that its claim for unemployment overpayments is nondischargeable under 11 U.S.C. § 523(a)(2)(B).[1] The KDOL's $29,154.42 claim stems from a KDOL examiner's findings of fraud, stemming from prepetition, unemployment compensation awards.[2] Defendant did not respond to KDOL's motion for summary judgment. [3]

KDOL's motion is granted. The undisputed evidence shows there is no genuine dispute of material fact that KDOL's claim for $29,154.42, plus interest accruing thereafter at a rate set by Kan. Stat. Ann. § 44-719(d)(2), is nondischargeable under § 523(a)(2)(B).

## I. Undisputed Material Facts

KDOL is a governmental entity that is authorized to administer various state and federal unemployment insurance benefits programs, including those programs established under the Coronavirus Aid, Relief, and Economic Security (CARES) Act.[4] In administering the various programs, KDOL receives and reviews all unemployment claims and determines the amount of benefits a claimant is entitled

---

[1] All statutory references are to Title 11 of the United States Code (the Bankruptcy Code) unless otherwise indicated. KDOL appears by Jessica A. Bryson and Cherry Reed. Defendant is proceeding pro se in this adversary proceeding.

[2] The claim includes interest, accruing at a rate set by Kan. Stat. Ann. § 44-719(d)(2).

[3] Doc. 19.

[4] The state and federal programs include the Kansas Employment Security Law, Kan. Stat. Ann. § 44-701 et seq., and 26 U.S.C. § 3304(c); the CARES Act programs pursuant to 15 U.S.C. §§ 9023 and 9025, and the Lost Wages Assistance Program (LWA) pursuant to 42 U.S.C. § 5174(e)(2), (f). *Id.* at p. 1 ¶ 1.

to receive for that particular work week based on, for example, how many hours the claimant worked and the amount of wages earned.

Between May 16, 2020, to July 24, 2021, Defendant used an online KDOL system to file weekly unemployment claims with KDOL and received unemployment benefits for the following work weeks:[5]

- May 16, 2020, through May 30, 2020
- June 13, 2020, through July 25, 2020
- August 1, 2020
- August 15, 2020, through August 22, 2020
- September 5, 2020
- September 12, 2020, through October 17, 2020
- January 2, 2021
- January 9, 2021, through January 30, 2021
- February 20, 2021, through March 6, 2021
- March 13, 2021, through March 20, 2021
- April 24, 2021, through May 1, 2021
- May 15, 2021, through May 22, 2021
- June 12, 2021, through July 24, 2021

For each claim, Defendant applied using the KDOL's online system to input his answers to questions relating to his earnings and employment for the particular week. When submitting a claim online, the claimant certifies the information he has provided is correct and complete to the best of the claimant's knowledge. For the weeks ending May 16, 2020, to May 30, 2020, and the weeks ending June 13, 2020, through July 25, 2020, Defendant reported he was employed. The claim software then prompted him to enter his gross earnings, and the number of hours worked. For the remaining weeks, Defendant certified he did not work and was therefore not required to report his earnings or number of hours. His answers to the questions in

---

[5] *Id.* at pp. 2-4; *see generally* Pl.'s Ex. 4.

**3**

the online claim program established whether he was entitled to benefits. Based on those answers, KDOL then determined what programs he qualified for and the amounts he would be entitled to receive.

In the identified work weeks Defendant obtained benefits from one or two programs, including regular unemployment insurance (UI), Federal Pandemic Unemployment Compensation (FPUC), Pandemic Emergency Unemployment Compensation (PEUC), and LWA.[6] In total, KDOL paid $23,496 to Defendant during the relevant time periods.

In 2021, KDOL began investigating Defendant after a quarterly report showed discrepancies in Defendant's reported earnings during a period when he was requesting and receiving benefits. KDOL obtained employment records from three of Defendant's employers: DHL Supply Chain (also known as Exel, Inc.), Randstad North America, dba Randstad USA, Inc., and Top Notch Personnel, Inc. The records obtained showed Defendant was paid wages above the amounts Defendant reported (if reported at all) for almost all the weeks he sought and obtained benefits.[7] On May 1, 2024, KDOL compiled the information obtained from

---

[6] The UI benefits are based on the claimant's employment history and reduced to zero depending on the reported wages, if any. Pl.'s Aff. ¶¶ 30, 31. The PEUC benefit amount is based on the claimant's weekly UI benefit amount. *Id.* at ¶ 32. The FPUC benefits were a supplemental benefit established by the CARES Act, and for weeks between April 4, 2020, and July 24, 2020, unemployed individuals would receive $600 a week so long as they were eligible to receive at least one dollar of certain benefits. *Id.* at ¶¶ 33, 34. The $600 FPUC benefit was reduced to $300 per week for the weeks between December 26, 2020, to September 4, 2021. *Id.* at ¶ 35. For August 1, 2020, through September 5, 2020, individuals received $300 per week in LWA benefits so long as they were qualified and eligible to receive at least $100 of certain benefits and self-certified they were unemployed due to Covid-19. *Id.* at ¶ 36.

[7] Specifically, DHL Supply Chain reported wages for the time periods of September 1, 2019, through May 5, 2020, then August 30, 2020, through March 6, 2021. *See also* Pl.'s Ex. 5, pp. 57-59. Randstad

4

Defendant's employers, as well as information provided by Defendant in his weekly claims into an Audit Notice that it then mailed to Defendant. The Audit Notice also informed Defendant of the potential overpayment of $23,496 and a $5,573 penalty.

On May 7, 2024, KDOL issued an Examiner's Determination finding that Defendant "willfully and knowingly failed to report employment and/or correct earnings while receiving unemployment benefits in an effort to receive benefits not otherwise due[.]"[8] The Examiner's Determination was mailed to Defendant's address of record with KDOL, and it was not returned as undeliverable. The Examiner's Determination advised Defendant of the Examiner's findings, the assessed overpayments and penalties, and his right to appeal within sixteen days. Defendant did not appeal the Examiner's findings.

As of the petition date, Defendant owed $29,154.42, consisting of principal balances: $5,695 in regular UI benefits, $4,601 in PEUC benefits, $12,000 in FPUC benefits, and $1,200 in LWA benefits; overpayment penalties: $1,423 for UI, $1,150 for PEUC, and $3,000 for FPUC; and interest in the amount of $85.42, with additional interest accruing.

## II. Procedural History

Defendant filed his Chapter 7 bankruptcy on July 18, 2024—a few months after KDOL mailed its Examiner's Determination. Defendant lists KDOL on

---

North America reported wages of the time periods of April 4, 2021, through May 22, 2021. *See also* Pl.'s Ex. 8, p. 88. Top Notch reported wages for the time periods of April 4, 2021, through September 24, 2021. *See also* Pl.'s Ex. 9, pp. 95-96.

[8] Pl.'s Ex. 1, p. 1.

Schedule E/F as a priority unsecured creditor with a claim of $29,000 for "unemployment overpaid."[9]

KDOL timely filed an adversary complaint alleging its claim in the amount of $29,154.42 is nondischargeable under § 523(a)(2)(B) because Defendant incurred the debt through fraud.[10] In his answer to the complaint Defendant asserted he was a victim of identity theft, denied owing unemployment overpayment benefits, and claimed he did not file for unemployment during the relevant period because he was employed.[11]

KDOL filed its motion for summary judgment, supported by an affidavit from Teresa Morris, an employee of KDOL.[12] KDOL properly served and filed a "Notice of Service of Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment," in accordance with D. Kan. 56.1(d). Defendant did not file a response to the motion for summary judgment.[13]

---

[9] Case No. 24-10660, Doc. 2, p. 23.

[10] Doc. 1.

[11] Doc. 8.

[12] Prior to filing its motion for summary judgment, KDOL served and filed notice of its First Request for Admissions and First Request for Production of Documents on Defendant. Docs. 17, 18. Defendant did not respond to either request. Under Fed. R. Civ. P. 36(a)(3), Defendant's failure to respond to the Requests for Admission deems all proper requests admitted. However, the contents of the Requests were not provided to the Court.

[13] Aside from his answer, Defendant has otherwise failed to participate in the party planning obligations and appear before the Court. He declined to participate in the Fed. R. Civ. P. 26(f) report and asked, instead, to appear at the scheduling conference. *See* Doc. 11. However, Defendant then failed to appear for the conference. Doc. 12. Similarly, Defendant did not assist in drafting the proposed Pretrial Order, and did not appear at a subsequent status conference. Docs. 21, 23.

### III. Analysis

#### A. Jurisdiction, Venue, and Burden of Proof

The Court has jurisdiction over this core proceeding arising under title 11,[14] and venue is proper.[15] KDOL must prove the elements of § 523(a)(2)(B) by a preponderance of the evidence.[16]

#### B. Standard for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is appropriate where the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.[17] In ruling on a motion for summary judgment, the court must draw all reasonable inferences from the record in favor of the non-moving party.[18] Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[19]

When assessing a motion for summary judgment, the movant bears the burden to demonstrate there is no genuine dispute as to material facts[20] and prove entitlement to judgment as a matter of law.[21] The non-moving party can avoid

---

[14] 28 U.S.C. §§ 1334(b), 157(b)(1) (granting authority to bankruptcy judges to hear core proceedings), (b)(2)(I) ("determinations as to the dischargeability of particular debts" are core proceedings).
[15] 28 U.S.C. § 1409.
[16] *Grogan v. Garner*, 498 U.S. 279, 287-88 (1991).
[17] Rule 56 applies to this adversary proceeding via Fed. R. Bankr. P. 7056.
[18] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).
[20] *Id.* at 323. A genuine dispute of material fact exists if, based on the evidence, a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[21] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 322-23).

7

summary judgment if it identifies specific evidence that demonstrates there is a genuine dispute of material fact for trial, or if the undisputed facts do not establish a sufficient legal basis to grant the movant judgment as a matter of law.[22]

Here, Defendant did not respond to KDOL's motion for summary judgment, which is supported by an affidavit. Because Defendant did not respond to those properly supported facts, the Court is permitted by Rule 56 to "consider the fact[s] undisputed for purposes of the motion"[23] and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it.[24] This same result is required by District of Kansas Local Bankruptcy Rule 7056.1. Rule 7056.1(a) states the "court will deem admitted for the purpose of summary judgment, all material facts contained in the statement of the movant unless the statement of the opposing party specifically controverts

---

[22] Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact *and* the movant is entitled to judgment as a matter of law." (emphasis added)). *See also Assessment Tech. Institute, LLC v. Parkes*, 588 F. Supp. 3d 1178, 1189 (D. Kan. 2022) ("To prevail on a motion for summary judgment on a claim upon which the moving party also bears the burden of proof at trial, the moving party must demonstrate no reasonable trier of fact could find other than for the moving party.") (internal quotation omitted); *In re QuVis, Inc.*, 446 B.R. 490, 493-94 (Bankr. D. Kan. 2011) (noting even if there are no disputed material facts, movant has burden to show those facts entitle movant to judgment as a matter of law).

[23] Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion.").

[24] Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it.").

8

those facts." Defendant's pro se status does not relieve him of his responsibility to follow these procedural requirements.[25]

Because of the foregoing, the statements of fact contained within KDOL's motion are deemed admitted.[26] Summary judgment in favor of KDOL is therefore appropriate *if* those material facts demonstrate it is entitled to judgment as a matter of law.

### C. Nondischargeability under § 523(a)(2)(B)

Section 523(a)(2)(B) provides:

> A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (B) use of a statement in writing—
>> (i) that is materially false;
>> (ii) respecting the debtor's or an insider's financial condition;
>> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>> (iv) that the debtor caused to be made or published with intent to deceive[.]

The exceptions to discharge are narrowly construed and "doubt is to be resolved in the debtor's favor."[27]

---

[25] *See, e.g., Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 540 (10th Cir. 2005) ("Although a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers, this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.") (internal quotations and alterations omitted).

[26] *See* D. Kan. LBR 7056.1(a); Fed. R. Civ. P. 56(e)(2). *See also Reed v. Nellcor Puritan Bennett*, 244 F. Supp. 2d 1205, 1208 (D. Kan. 2003) (accepting "as true all material facts asserted" with proper support where nonmoving party failed to respond to a motion for summary judgment).

[27] *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997).

**9**

First, for § 523(a)(2)(B) to apply, the statement at issue must be either "written by the debtor, signed by the debtor, or written by someone else but adapted and used by the debtor."[28] It is not necessary for the writing to be entirely completed by the debtor so long as debtor either wrote, signed, or adopted the statement.[29]

Here, although Defendant's unemployment claims were not written by him on paper, his online statements constitute a writing under § 523(a)(2)(B) because the evidence shows Defendant initiated the unemployment claim, inputted information based on his circumstances (answered questions regarding how many hours he worked and his earned wages), certified the information he entered was correct and complete to the best of his knowledge, and used the completed submission to obtain unemployment benefits.[30]

---

[28] *In re Kaspar*, 125 F.3d at 1361 (citing *4 Collier on Bankruptcy,* ¶ 523.08[2][a] (Richard Levin & Henry J. Sommer eds., 15th ed.1997)); *Alva State Bank & Tr. Co. v. Flaming (In re Flaming)*, No. 05-13512, Adv. No. 05-5890, 2007 WL 4241824, at *6 (Bankr. D. Kan. Nov. 21, 2007).

[29] *Itria Ventures LLC, v. Chadha (In re Chadha),* 598 B.R. 710, 718 (Bankr. E.D.N.Y. 2019) (concluding that a writing need not be completed entirely by the debtor, instead, "[i]t is sufficient that [a] [d]ebtor[] either wrote, signed, or adopted such statement to find that the documents were 'written' by them.") (quoting *In re Cedillo*, 573 B.R. 405, 421 (Bankr. E.D.N.Y. 2017)) (alternation in original); *Fleming Mfg. Co., Inc., v. Keogh (In re Keogh)*, 509 B.R. 915, 932 (Bankr. E.D. Mo. 2014) (holding a written statement "need not be physically prepared by a debtor") (citing *In re Braathen,* 364 B.R. 688, 700 (Bankr. D.N.D. 2006); *In re Hambley*, 329 B.R. 382, 399 (Bankr. E.D.N.Y. 2005)).

[30] *See Ill. Dep't of Emp. Sec. v. Davis (In re Davis*), 668 B.R. 580, 597 (Bankr. N.D. Ill. 2025) ("The [d]ebtor's certifications via an internet form are statements in writing.") (referring to *Alpha Tech Pet Inc. v. LaGasse, LLC*, 16 C 4321, 2017 WL 5069946, at *5 (N.D. Ill. Nov. 3, 2017), *aff'd sub nom*. *Brodsky v. HumanaDental Ins. Co.*, 910 F.3d 285 (7th Cir. 2018)). The Tenth Circuit's decision in *In re Kaspar* held the debtor's oral responses that were inputted into a loan application by one of the creditor's employees was not a statement in writing under § 523(a)(2)(B) because the debtor neither prepared the document nor saw or adopted it. *In re Kaspar*, 125 F.3d at 1361-62. Although Defendant's claims were submitted online and the claims as provided by KDOL were printed from KDOL's system and likely visually different than the initial claim submitted, the Tenth Circuit's concerns in *Kaspar* are not present because here, Defendant personally added the relevant information, saw the claim, certified the information was true and correct, and then submitted the claim.

**10**

Second, the statement must be "objectively material, meaning that it must misrepresent information of the type that normally affects the particular type of decision at issue."[31] In other words, the false statement is material if it would influence the creditor's decision.[32] Omitting, concealing, or understating liabilities will generally constitute a materially false statement.[33]

Defendant's misrepresentations as to his lack of employment and under-reported wages were material. They directly impacted his eligibility for unemployment benefits. Indeed, the Examiner's Determination explicitly found Defendant "willfully and knowingly failed to disclose a material fact, or made a false statement or representation to receive benefits not due."[34] Thus, this requirement is satisfied.

Third, a statement is "respecting" a debtor's financial condition if the statement has a "direct relation to or impact on the debtor's overall financial status."[35] This includes statements made regarding "a debtor's net worth, overall

---

[31] *Collier on Bankruptcy* ¶ 523.08[2][a]; *Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1114 (3d Cir. 1995) (a statement is materially false "if it influences a creditor's decision to extend credit").

[32] *In re Cohn*, 54 F.3d at 1114.

[33] *Collier on Bankruptcy* ¶ 523.08[2][a].

[34] Pl.'s Ex. 1, p. 1. KDOL urges the Court to give preclusive effect to the Examiner's Determination. This issue need not be decided because KDOL has satisfied the elements for nondischargeability under § 523(a)(2)(B) via its uncontested motion for summary judgment. Defendant had the right to present rebuttal evidence on each element of the nondischargeability claim, but he did not do so. The Examiner's Determination is, however, admissible evidence under Fed. R. Evid. 401(a), as it has a tendency to make a fact more or less probable, and it is part of the overall totality of circumstances indicating each element of § 523(a)(2)(B) is satisfied.

[35] *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 720 (2018); *Kan. Dep't of Lab. v. Larson (In re Larson)*, No. 21-10198, Adv. No. 21-5014, 2022 WL 1073699, *6-7 (Bankr. D. Kan. Apr. 8, 2022).

11

financial health, or ability to generate income."[36] Because Defendant's statements related to his employment and wages or lack thereof (i.e., his ability to generate income), this requirement is satisfied.

Fourth, the creditor must have relied on the statement and its reliance was reasonable.[37] The reasonableness of a creditor's reliance on a statement is analyzed under the particular facts and circumstances of a case.[38] Direct proof of actual reliance may be shown by circumstantial evidence.[39]

KDOL's initial reliance on Defendant's assertions of weekly income and employment was reasonable considering its goal to timely provide unemployment insurance benefits to those who desperately need them.[40] As this Court discussed in *In re Oliver*:

> Were KD[O]L required to wait to pay out benefits until after comparing the wages the employer submitted with those submitted by the claimant, claimants would be forced to wait additional time for benefits [than] the legislature

---

[36] *Cadwell v. Joelson (In re Joelson)*, 307 B.R. 689, 696 (10th Cir. BAP 2004), *aff'd,* 427 F.3d 700 (10th Cir. 2005) (holding the better approach is the "narrow interpretation that defines a statement of financial condition to be a statement of debtor's net worth, overall financial health, or ability to generate income").

[37] *GDO Inv., Inc. v. Glasgow (In re Glasgow)*, 370 B.R. 362, 372 (Bankr. D. Colo. 2007) (citing *First Nat'l Bank v. Cribbs (In re Cribbs)*, 327 B.R. 668 (10th Cir. BAP 2005) *aff'd*, No. 05-6225, 2006 WL 1875366 (10th Cir. July 7, 2006); *In re Flaming*, 2007 WL 4241824, at *6 (noting the reasonable reliance standard under § 523(a)(2)(B) is "a more stringent standard than the justifiable reliance standard of § 523(a)(2)(A)") (citing *Field v. Mans*, 516 U.S. 59, 74-75 (1995)).

[38] *Leadership Bank, N.A., v. Watson (In re Watson)*, 958 F.2d 977, 978 (10th Cir. 1992); *see In re Cohn,* 54 F.3d at 1117 (identifying three factors to consider such as the creditor's standard practices, the standards or customs in the industry, and the surrounding circumstances); *see also Bailey v. Turner (In re Turner),* 358 B.R. 422, 426 (Bankr. N.D. Okla. 2006) (adopting the three-factor test for reasonable reliance set forth by *In re Cohn*).

[39] *In re Cribbs*, 327 B.R. at 674.

[40] *See* Kan. Stat. Ann. § 44-702 ("Economic insecurity, due to unemployment, is a serious menace to health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern that requires appropriate action by the legislature to prevent its spread and to lighten its burden that now so often falls with crushing force upon the unemployed worker and such worker's family.").

> has deemed appropriate…. The requirements of economic security compel an efficient distribution of the social benefits provided by the state for those most in need and certainly justify the procedures used by KD[O]L.[41]

While the reliance comes with risks, KDOL has safeguards in place that further support the reasonableness of KDOL's initial reliance on the claimant's reported wages and employment. These safeguards include requiring claimants to certify that the information they provided was true and correct under penalty of perjury before the claims can be submitted, quarterly cross-checking the wage information reported by the claimants against the wage information provided by the employers to identify potential discrepancies, investigating any discrepancies discovered, and utilizing significant and costly penalties to deter claimants from submitting false information to obtain benefits.[42]

Fifth, the statement must have been caused to be made or published with the intent to deceive. The intent to deceive may be inferred from the totality of the circumstances, including a "reckless disregard for the truth."[43] "A finding of reckless disregard should be narrowly interpreted because a misrepresentation is fraudulent only if the maker 'knows or believes the matter is not what he represents it to be.'"[44]

---

[41] *Kansas ex. rel. Gordon v. Oliver (In re Oliver)*, 554 B.R. 493, 501-02 (Bankr. D. Kan. 2016). Although *Oliver* was decided under § 523(a)(2)(A) (justifiable reliance), not (a)(2)(B) (reasonable reliance), the analysis is nevertheless relevant.

[42] Pl.'s Aff. ¶¶ 29, 40, 41; Kan. Stat. Ann. § 44-706(g). *See c.f. In re Cribbs*, 327 B.R. at 674 (the creditor's reliance on the loan request was not reasonable because the creditor did not investigate whether the assets existed or verify the debtor's financial situation before granting the large loan).

[43] *In re Cribbs*, 327 B.R. at 673 (citing *Blue Ridge Bank & Tr. v. Cascio (In re Cascio),* 318 B.R. 567, 575 (Bankr. D. Kan. 2004)).

[44] *Id.* (citing *Chevy Chase Bank FSB v. Kukuk (In re Kukuk)*, 225 B.R. 778, 787 (10th Cir. BAP 1998)).

**13**

Based on the evidence provided and the totality of the circumstances, it is clear Defendant's claims were even more than a reckless disregard for the truth. Indeed, the Examiner also found Defendant "willfully and knowingly failed to report employment and/or correct earnings."[45] Defendant submitted his weekly unemployment compensation claims on his own behalf. Defendant obviously knew his own employment status, but repeatedly misrepresented that status. And the uncontroverted facts show Defendant received $23,496 based on representations that he knew were false and failed to remedy the error, which persuades the Court that Defendant's misrepresentations were intentional.[46] This satisfies the "intent to deceive" requirement.

Thus, the Court finds that KDOL has satisfied all five requirements to show its claim is nondischargeable under § 523(a)(2)(B). Accordingly, because the overpayment is nondischargeable, the interest accruing pursuant to Kan. Stat. Ann. § 44-719(d)(2) is also nondischargeable.[47]

---

[45] Pl.'s Ex. 1, p. 1.

[46] *See In re Oliver*, 554 B.R. at 500–01 (finding the debtor had the intent to deceive under the totality of the circumstances because the representations were false, and the debtor failed to remedy the error but continued accepting benefits).

[47] Kan. Stat. Ann. § 44-719(d)(2) ("Any benefit erroneously paid which is not repaid shall bear interest at the rate of 1.5% per month or fraction of a month."); *see In re Oliver*, 554 B.R. at 502 fn.45 (finding the statutory interest on the overpayment arose from the debtor's fraud and was nondischargeable under § 523(a)(2)(A)); *State of Kan. Dep't of Lab. v. Singleton (In re Singleton)*, 553 B.R. 420, 427-28 (Bankr. D. Kan. 2016) (determining the pre- and post-petition statutory interest on the overpayment under Kan. Stat. Ann. § 44-719(d)(2) was nondischargeable because the interest was expressly imposed by the statute and did not qualify as a dischargeable government penalty under § 523(a)(7)); *see also Cohen v. De La Cruz*, 523 U.S. 213, 218 (1998) (holding the phrase "to the extent obtained by" in § 523(a)(2) "does not impose any limitation on the extent to which 'any debt' arising from fraud is excepted from discharge, therefore, once shown that the money or property was obtained by fraud, "'any debt' arising therefrom is excepted from discharge.").

14

## IV. Conclusion

KDOL has shown there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. KDOL is entitled to summary judgment on its claim that Defendant's $29,154.42 debt, plus the interest accruing thereafter at a rate set by Kan. Stat. Ann. § 44-719(d)(2), should be excluded from Defendant's discharge pursuant to § 523(a)(2)(B). KDOL's motion for summary judgment[48] is granted.

**It is so ordered.**

# # #

---

[48] Doc. 19.

15

Case 24-05018    Doc# 25    Filed 07/11/25    Page 15 of 15